## Fayette County Board of Education et al. v. Bryan et al.

(Decided March 3, 1936.)

62

R. W. KEENON for appellants.

W. E. DARRAGH, OWEN REYNOLDS, and NATHAN ELLIOTT for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal asks a reversal of a delcaratory decree respecting the right of reversion in three parcels of land conveyed to school district trustees for school purposes. The appellant is the successor in title to the property. It has recently erected more modern and commodious buildings upon other tracts in order the better to serve the same territories. There is no intention of using any of the properties in the future except for purposes other than conducting schools on them.

I. On June 24, 1893, for $100 consideration, Martha Hicks conveyed a half acre to the trustees of common school district No. 16 of Fayette county "and their successors in the trust forever, subject, however, to the following trusts and conditions; the said tract of land shall be used only for school purposes, for the accommodation of the public school in common school district No. 16, of Fayette county, Kentucky, at which white children only are to be admitted, and should the said land ever be used for any other purpose, the title thereto shall at once revert to and be vested in the first party, free from any right or claim of second parties." The contingency named in the deed having occurred, the question is whether the property has reverted to the heirs of the grantor, she having died intestate, or whether the school board now holds the fee-simple title

notwithstanding the provisions of the deed. The board claims title for two reasons, (1) the reversion clause is void because it offends our statute against perpetuities, section 2360, Kentucky Statutes, and (2) if not void, its operation was confined alone to Mrs. Hicks, since she is the only person named in the deed to take the reversion and, as she died before the contingency happened, her heirs are not entitled to the property.

The purpose of the statute against perpetuities is not to compel the vesting of estates, but to prohibit unreasonable restraints upon alienation. The deed to the trustees did not render the property inalienable. It was transferable so long as it was used for the purposes designated. Likewise, under statutory law, the grantor had power to sell and convey her vested reversionary right, or to release it at any time to the holder of the defeasible or determinable fee, thereby vesting complete title to the land in the grantees or their successors. Sections 2341, 2359, Kentucky Statutes. Being an interest in property which could be sold, certainly it was an interest which descended to the owner's heirs in the absence of testamentary disposition. Patterson v. Patterson, 135 Ky. 339, 122 S. W. 169; Board of Education for Jefferson County v. Littrell, 173 Ky. 78, 190 S. W. 465; Bowling v. Grace, 219 Ky. 496, 293 S. W. 964; 23 R. C. L. 1104; 21 C. J. 1018; Tiffany on Real Estate, sec. 131; North v. Graham, 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624, 126 Am. St. Rep. 189; Hinton v. Gilbert, 221 Ala. 309, 128 So. 604, 70 A. L. R. 1192.

There is no conflict between this conclusion and that reached in Duncan v. Webster County Board of Education, 205 Ky. 86, 265 S.W. 489. In that case, the reversion stipulated in the deed was to the "tract of land, or to the person then owning and possessing the said tract of land." That put it beyond the power of the grantor to interfere in the future with the title to the reversion, since it could not be known who would be the owner of the tract until there was a breach of the conditions of the deed, nor, of more controlling importance, when that would take place. There was an indefinite suspension of the power of alienation. The case is thus distinguished in Bowling v. Grace, supra.

II. On April 18, 1896, John Tuttle and wife, for the consideration of $19 conveyed an acre to the trustees of school district No. 26 of Fayette county and

their successors in office "so long as it is used for a school." Thereafter Tuttle conveyed to Gully the tract from which the school lot was taken. His deed excluded it, but provided that "should it ever cease to be used for school purposes, then it is to revert to the party of the second part and to become part of this conveyance." By mesne conveyances containing the same clause, the property is now owned by Anna B. Anderson, who claims the school lot in this suit.

The clause was not merely declaratory of the purpose for which the land was conveyed, which recitals are generally held not to have the effect of limiting the estate granted or rendering it liable to divestiture upon a departure from the use specified. See Wright & Taylor v. County Board of Education of Bullitt County, 151 Ky. 560, 152 S.W. 543; Bridwell v. McGrew, 228 Ky. 334, 14 S.W.(2d) 1085. But the clause limited the purpose and granted an estate for such a time as it was so used. This was a specified condition subsequent which created a determinable or qualified fee, subject to termination and reversion upon cessation of that use. The intention and purpose that title should revert to the grantor upon a failure to use the land for a school is clearly implied. Tiffany on Real Property, secs. 76, 81, 91, 93; Board of Education for Jefferson County v. Littrell, supra; First Universalist Society v. Boland, 155 Mass. 171, 29 N.E. 524, 15 L.R.A. 231; notes 19 L.R.A. 262, 267.

The appellant submits that if there was any reversion it was to the owner of the tract out of which the parcel was carved, and, consequently, was within the statute against perpetuities as was held in the Duncan Case, supra. But, as stated in 21 R.C.L. 299:

"An estate on condition leaves in the grantor a vested right, which, by its very nature, is reserved to him as a present existing interest, transmissible to his heirs."

And it is well settled that the conveyance of a fee on a condition subsequent creates a possibility of a reversion in the grantor or his heirs. 23 R.C.L. 1103. There was a remnant of an estate continuing in the grantor, Tuttle, which was capable of being transmitted. I Minor on Real Property (2d Ed.) sec. 769. It does not, therefore, seem to make any difference that there was no specific, express provision that the prop-

erty should revert to the grantor or his heirs or assigns. The law put it there. The authorities cited above in relation to the Hicks property settle the issue as to this parcel under such an interpretation. See, also Copenhaver v. Pendleton, 155 Va. 463, 155 S. E. 802, 77 A.L.R. 324, for an elaborate treatment of the subject of reversions and possibilities of reverter.

III. On January 12, 1891, the heirs and devisees of Margaret A. Graves for the consideration of $300 conveyed an acre of land to the trustees of school district No. 3 of Fayette county. The habendum of the deed is:

"To have and to hold said lot of land unto the parties of the second part and their successors in office forever, upon this condition that said lot is hereby sold for the purpose of erecting a school house for white children and it is agreed and understood by the parties hereto, that if said property ever ceases to be used for the purpose of a school for white persons or is ever used as a school for any colored person, or for any other reason becomes a nuisance to the public and especially to the tract of land from which this lot is granted, then said lot of land shall revert to the estate from which it is hereby granted. The parties of the second part agree upon behalf of themselves, and their successors in office a good and lawful fence shall be erected and maintained around lot hereby conveyed and the parties of the first part hereby release all their right, title and interest present or contingent in said property and covenant to warrant generally the same unto second parties and their successors in office forever. It is only agreed by second parties that persons attending said school shall not be allowed to trespass upon the premises of first parties hereto."

The particular question is the interpretation and effect of the provision for revision, "to the estate from which it is hereby granted."

While there was a covenant of general warranty and the grantors expressly released "all their right, title and interest, present or contingent" in the property, the covenant and grant must be read in the light of the conditions stipulated and must be construed as relating to the interests of the grantors so long as those conditions existed.

If the phrase is to be regarded as referring to the tract of land from which the lot was taken, then the contention of the appellant that the reversion is void as being a perpetuity is well taken under the decision in Duncan v. Webster County Board of Education, supra. There is some force in the argument, particularly when coupled with the reference to the effect of the use of the lot becoming a nuisance "especially to the tract of land from which this lot is granted." The word "estate" is often applied in relation to land or property. However, its primary meaning is the interest or title of the parties in property. Harlan v. Lumsden, 62 Ky. (1 Duv.) 86; 9 R.C.L. 6; 10 R.C.L. 646; 28 R.C.L. 236. It is not unusual for a will to provide that in the event of certain contingencies occurring, property devised shall revert to the testator's estate. Supporting the interpretation that the reversion in the deed before us was not intended to run with the land from which the parcel was carved is the fact that the conveyance was a part of the estate of a deceased person and was being made by her heirs and distributees. In King v. Wurts, 227 Ky. 705, 13 S.W.(2d) 1043, we considered a deed containing a condition that in case the grantee died without children to inherit, the land should "revert back to the estate" of the grantor. Referring to two commonly accepted definitions of "estate," the court held the property became a portion of the "entire corpus of the property owned by" the grantor, the condition of reverter having come to pass.

We therefore conclude that the reservation was to the estate of Margaret Graves, deceased, and descended to her heirs. Such was the adjudication by the trial court, and upon the authorities already cited we concur in that conclusion.

The fact that the board of education is continuing to provide school facilities for the communities upon other lands does not save these lands to them. The express conditions of conveyances have been breached.

The judgment in all particulars is affirmed.